UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA RAMSEUR, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-0169 (ESH) |
| THOMAS E. PEREZ, Secretary, U.S. Department of Labor, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Ramseur brings this action against Thomas E. Perez, in his official capacity as the Secretary of the Department of Labor.[1] She asserts claims for discrimination on account of race and sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. 2000e-16. Before the Court is defendant's motion for judgment on the pleadings, plaintiff's opposition thereto, and defendant's reply. For the reasons stated herein, defendant's motion is granted in part and denied in part.

### BACKGROUND

When the events giving rise to this case occurred, plaintiff was employed by the Department of Labor ("DOL") as a Staff Assistant, GS-09, assigned to the Office of the Director in DOL's Civil Rights Center ("CRC"). (Compl. ¶ 6, Feb. 6, 2013.) On May 18, 2009, defendant posted a vacancy announcement for a "GS-11 Staff Assistant" in the CRC. (*Id*. ¶¶ 1, 6.) The position description included a requirement that a successful applicant must have

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Thomas Perez, the current Secretary of Labor, has been substituted for the former Acting Secretary, Seth D. Harris.

"specialized experience in planning, implementing, or evaluating compliance and technical assistance activities related to recipients of federal financial assistance; conducting EEO and EO investigations and non-discrimination statutes under Title VI and VII of the Civil Rights Act and Related Statutes." (*Id*. ¶ 1.) Shortly after the advertisement was posted, plaintiff applied for the position. (*Id.*)

On October 26, 2009, plaintiff received notice that she had been deemed "unqualified" for the position because of her lack of specialized experience. (Compl. ¶ 34.) Plaintiff alleges that this specialized experience is "unrelated and unnecessary" to the position advertised. (*Id.* ¶ 20; *see also id*. ¶¶ 1, 2, 11-14, 21, 22, 24, 31, 47.) She alleges that the GS-11 Staff Assistant position "contained the same administrative duties that were already being performed by [her]." (*Id*. ¶ 6.) Further, she alleges that the specialized experience requirement had been added to the job qualifications by her supervisor, Patricia Lamond, specifically to prevent her from qualifying for the position and that she had never been given the opportunity to gain such experience. (*See, e.g*., *id.* ¶¶ 43, 46.)

On November 5, 2009, plaintiff received a performance rating of "effective" and no bonus award. (*Id.* ¶¶ 18, 49.) She claims that, unlike all other CRC employees, she was the only support staff who did not receive a bonus in 2009, and that she had not been given the opportunity to participate in a mid-year appraisal that could have informed her that she needed to improve her performance. (*Id.* ¶ 49.) Plaintiff also alleges that Eliva Mata forwarded her performance appraisal to the Human Resource Center without allowing her to add her comments. (*Id.*) On both November 17 and 18, 2009, plaintiff asserts that Lamond yelled at her for failing to copy a document and properly deal with office correspondence. (*Id.*)

On December 9, 2009, plaintiff submitted an "Informal Complaint Information Form" to

the CRC (Def.'s Mot. for Judgment on the Pleadings ("Def. Mot."), Ex. 1, May 15, 2013), and on February 4, 2010, she filed a formal administrative complaint. (*Id.*, Ex. 2 ("EEO Formal Compl.").) On April 18, 2012, an EEOC administrative judge dismissed plaintiff's claims.

On February 6, 2013, plaintiff filed an employment discrimination complaint under Title VII, claiming that (1) defendant engaged in an unlawful employment practice by including a requirement in the staff assistant job posting that disproportionately disqualifies minority and/or women applicants and has no relationship to the tasks expected to be performed (Compl. ¶¶ 52-56 (Count I)); (2) defendant retaliated against her by giving her a lower performance review and denying her a performance award, delaying the progress of her administrative claim, and subjecting her to a hostile work environment (*id.* ¶¶ 57-61 (Count II)); (3) defendant subjected her to a retaliatory hostile work environment for "speaking out against the denial of a promotion opportunity," by subjecting her to constant yelling and by instructing her to leave post-it notes in her cubicle when she was not at her desk (*id.* at 25-28 (Count III)); and (4) she is a victim of "workplace bullying" because her supervisor constantly yelled at her. (*Id.* at 28-29 (Count IV).) Defendant filed an answer (Answer, Apr. 8, 2013), and plaintiff filed a response thereto. (Pl. Resp. to Answer, Apr. 19, 2013.) The Court held an initial scheduling conference on May 1, 2013, and discovery commenced.

Defendant has now filed a motion for judgment on the pleadings on the ground that plaintiff failed to exhaust administrative remedies and that the complaint failed to state a claim upon which relief can be granted.

## ANALYSIS

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c). A Rule 12(c) motion shall be granted "if the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (internal quotations omitted). When evaluating a motion for judgment on the pleadings, courts employ the same standard that governs a motion to dismiss under Rule 12(b)(6). *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court "should take all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotations omitted).

## I. COUNT I: DISCRIMINATION

Plaintiff claims that defendant engaged in an unlawful employment practice by including a requirement in the staff assistant job posting that disproportionately disqualifies minority and/or women applicants and has no relationship to the tasks expected to be performed. (Compl. ¶¶ 1, 52-56.) Defendant argues that plaintiff's disparate impact claim fails to state a claim upon which relief can be granted, or, alternatively, that plaintiff has failed to exhaust her administrative remedies as to her disparate impact theory. (Def. Mot. at 11-16.) The Court disagrees, for the allegations in plaintiff's complaint are sufficient to survive a motion to dismiss and plaintiff has exhausted her administrative remedies. In addition, defendant overlooks the fact that Count I alleges both a claim for disparate impact and disparate treatment.

4

## A. Failure to State a Claim

"[A] plaintiff establishes a prima facie disparate-impact claim by showing that the employer 'uses a particular employment practice that causes a disparate impact' on one of the prohibited bases." *Lewis v. City of Chicago*, 560 U.S. 205, 130 S. Ct. 2191, 2197-98 (2010) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009)). "Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). "An employer may defend against liability by demonstrating that the practice is 'job related for the position in question and consistent with business necessity.'" *Ricci*, 557 U.S. at 578 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). "Even if the employer meets that burden, however, a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.* (citing §§ 2000e–2(k)(1)(A)(ii) and (C)).

However, to survive a motion to dismiss, a plaintiff need not "make out a *prima facie* case of discrimination." *Ali v. District of Columbia*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010). Although "[c]ommon sense and fairness . . . dictate that plaintiff must, at a minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation," *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004), plaintiff's allegations satisfy this standard, especially considering that she was proceeding *pro se* at the time she filed her complaint. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*pro se* pleading held to "less stringent standards than formal pleadings drafted by lawyers"). For

example, the complaint includes allegations that defendant "took the duties for Equal Opportunity Specialists and made it the criteria for the women applicants applying for the [GS-11 Staff Assistant] vacancy, who are experienced at performing administrative duties," and as a result, "each African-American and/or women's application for the [GS-11] who was an experienced administrative applicant was impacted." (Compl. ¶ 19.) In addition, the complaint alleges that "Defendant's unrelated and unnecessary criteria for the staff assistant vacancy had a discriminatory and d[i]sperate impact on eight women and African-American applicants" (*id.* ¶ 20), and that the Staff Assistant position "is traditionally held by women and/or African-American women, who are experienced in performing administrative duties." (*Id.* ¶ 24.) The gist of these allegations is that the impact of the specialized experienced qualification was to disproportionately disqualify female and African-American applicants. While it may be that plaintiff's disparate impact claim will not ultimately survive, she has alleged at least an "elementary" statistical disparity that is sufficient to allow the claim to proceed. *See, e.g.*, *Munro v. LaHood*, 839 F. Supp. 2d 354, 363 (D.D.C. 2012) (motion to dismiss denied despite "doubts as to whether plaintiff will ultimately be able to prove" discrimination claim).

### B. Exhaustion

"[T]imely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government." *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008). Defendant argues that plaintiff failed to exhaust her disparate impact claim because that claim is not "like or reasonably related to" her underlying administrative claim. (Def. Mot. at 8 (citing *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

The purpose of the exhaustion requirement is "to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened

only when reasonably necessary," not to create a "procedural roadblock to access to the courts." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) (internal quotations and citations omitted). Thus, "an administrative charge is not a blueprint for the litigation to follow . . . [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." *Howard v. Gutierrez*, 571 F. Supp. 2d 145, 157 (D.D.C. 2008); *Williams v. Dodaro*, 576 F. Supp. 2d 72, 82-83 (D.D.C. 2008) ("the fact that [plaintiff] describe[s] her allegations with greater specificity in [the civil] proceedings does not establish that she failed adequately to present them at the administrative level"). Thus, although an employee may only file claims that are "like or reasonably related to the allegations of the [EEO] charge and grow[ ] out of such allegations)," *Park* , 71 F.3d at 907, "the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Howard*, 571 F. Supp. 2d at 157; *see Park* , 71 F.3d at 907 ("At a minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." (internal quotations omitted)). In addition, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008).

Here, plaintiff's disparate impact claim satisfies the "like or reasonably related" test. *See Park*, 71 F.3d at 907. In her formal administrative complaint, plaintiff alleged discrimination based on race, sex, and color based on her belief that "specialized experience has no relevance to the GS-11 Staff Assistant vacancy announced," that this qualifying criteria had never been required previously for this level or type of position, and that the only reason she did not get the

7

job was because of the specialized experience qualification. (EEO Formal Compl. at 1). Thus, plaintiff's administrative complaint identified a facially neutral employment policy and alleged that it was responsible for her not getting the job she applied for. That is sufficient to put the defendant on notice to investigate the policy. *See, e.g.*, *Watkins v. City of Chicago,* 992 F. Supp. 971, 973 (N.D. Ill. 1998) (disparate impact claim was reasonably related to disparate treatment claim where plaintiff alleged that she was denied promotion due to the city's policy of disqualifying individuals arrested for felonies because plaintiff's charge would have led to an investigation into whether such a policy existed); *DiPompo v. W. Point Military Acad.*, 708 F. Supp. 540, 547-48 (S.D.N.Y. 1989) (plaintiff exhausted disparate impact claim when he alleged in his EEO complaint that a reading test operated to discriminate against him because of his handicap of dyslexia even though EEO officer "never considered" whether plaintiff might have a disparate impact claim); *cf. Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) ("[A] disparate impact investigation could not reasonably have been expected to grow out of [plaintiff's] administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only.")

    **C.    Disparate Treatment**

In challenging plaintiff's disparate impact claim, defendant overlooks plaintiff's claim for disparate treatment, which is reflected by her formal administrative complaint (EEO Formal Compl. at 1), her civil complaint (Compl. ¶¶ 18, 49), and in her response to defendant's motion for judgment on the pleadings. (Pl.'s Opp'n to Def. Mot. at 13, June 28, 2013.) "Although disparate treatment and disparate impact allegations are substantiated using different types of evidence, they are both methods of proving Title VII discrimination and may be plead in a single

claim." *See Watkins*, 992 F. Supp. at 973.

Accordingly, plaintiff may proceed with her discrimination claim under Count I as both a disparate treatment and disparate impact claim.

## II.  COUNT II: RETALIATION

Under Title VII, an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The policy rationale behind barring retaliation is to provide protection to an employee seeking to enforce Title VII's basic guarantees. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

To state a claim for retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006). Regarding the element of causation, the Supreme Court has recently held that Title VII retaliation claims "require proof that the desire to retaliate was the but-for cause of the challenged employment action," a stricter test than the "motivating factor" test applicable to status-based discrimination. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

Plaintiff's first retaliation claim is that defendant retaliated against her by giving her a low performance rating; forwarding that rating to the Human Resources Center without allowing plaintiff an opportunity to add her comments to the review, as allegedly promised; not giving her

9

a bonus; and subjecting her to a hostile work environment.² (Compl. ¶¶ 57-61.) Defendant argues that this claim fails as a matter of law because these actions predated any protected activity. (Def. Mot. at 16-18.) As plaintiff has failed to respond to this argument, the Court will treat this claim as conceded. *See, e.g.*, *McMillan v. Wash. Metro. Area Transit Auth.*, 898 F. Supp. 2d 64, 69 (D.D.C. 2012) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") But even if the Court were to reach the merits, it is clear from the face of her complaint that plaintiff could not allege a causal connection between these events and her protected activity. As defendant points out, plaintiff's first protected activity occurred on December 9, 2009 (Def. Mot. at 16-18), but the acts that she is complaining about all occurred in November 2009. (EEO Formal Compl. at 1.) Thus, it is factually impossible for plaintiff to prove causation as to this retaliation claim.

Plaintiff's second retaliation claim is that defendant retaliated against her by failing to comply with EEOC procedures and twice delaying the investigative process. (Compl. ¶¶ 57-61.) Defendant argues that this retaliation claim also fails as a matter of law because there is no cause of action under Title VII for delay or interference in the administrative process. (Def.'s Mot. at 18-19.) Defendant is correct. "'There is no cause of action' for federal employees to bring retaliation or discrimination claims based on 'complaints of delay or interference in the investigative process.'" *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010) (quoting *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005)); *see also Trout v. Lehman,* No. 82-2507, 1983 WL 578, at *1 (D.D.C. July 7, 1983) (retaliation claim regarding interference with an EEOC investigation is not about a condition of employment and "therefore not cognizable as a separate

---

² Plaintiff's claim that defendant retaliated against her by subjecting her to a hostile work environment is addressed in Section III, *infra*.

10

cause of action in a judicial proceeding brought under Title VII").

As neither of plaintiff's retaliation claims are viable, Count II will be dismissed.[3]

## III.    COUNT III: HOSTILE WORK ENVIRONMENT

Plaintiff claims that defendant subjected her to a hostile working environment in retaliation for speaking out against the "denial of a promotion opportunity." (Compl. at 25-28.) Specifically, plaintiff alleges that Lamond subjected her to constant yelling and instructed her to leave post-it notes in her cubicle when she was not at her desk. (*Id.*)

To prevail on a retaliatory hostile work environment claim, "a plaintiff must show that h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). This standard is "sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* (internal quotations omitted)

Defendant argues that plaintiff has not stated a claim for a retaliatory hostile work environment because the alleged conduct is not "extreme" enough "to amount to a change in the

---

[3] Since defendant's motion to dismiss plaintiff's retaliation claim has been granted on the merits, the Court does not need to address defendant's alternate argument that plaintiff failed to exhaust her administrative remedies as to this claim. (Def. Mot. at 11-13.)

11

terms and conditions of employment." (Def. Mot. at 20-21 (quoting *Faragher*, 524 U.S. at 788).) At this stage in the proceedings, the Court is unable to conclude that the allegations in the complaint are deficient as a matter of law and, therefore, Count III will not be dismissed.

## IV. COUNT IV: WORK PLACE BULLYING

Plaintiff claims that she was a victim of workplace bullying because of "constant yelling" by Lamond and her having "humiliated" her by "sabotaging" the vacancy announcement to portray plaintiff as "unqualified." (Compl. at 29.) Defendant correctly states that workplace bullying is not an independently cognizable claim under Title VII, but that if the bullying is sufficiently "severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," plaintiff may be able to recover under a hostile work environment claim. *See Baloch*, 550 F.3d at 1201; *accord Hussain*, 435 F.3d at 366. Nor does the Indiana Supreme Court case plaintiff refers to in her complaint suggest that there is an independently cognizable common law claim for "workplace bullying." *See Raess v. Doescher*, 883 N.E.2d 790, 799 (Ind. 2008). Thus the Court will dismiss Count IV and treat its allegations as part of Court III, plaintiff's hostile work environment claim.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that defendant's motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**; it is further **ORDERED** that the motion is **GRANTED** as to Counts II and IV and those counts are **DISMISSED**; and it is further **ORDERED** that the motion is **DENIED** as to Counts I and III.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: August 23, 2013